Well, there is some storm going out there. But there's no storm in here. We have a wonderful discussion that we're about to embark on. And we shall begin. I hope one and all are well. And is it Swindler? It is your honor. Thank you. Come forward, sir. We look forward to hearing your argument. I'd like to say three minutes for rebuttal. Absolutely. Go ahead, sir. Your honors, may it please the court. My name is Justin Swindler and I represent Mr. Singh in a lawsuit that he brought against Uber in the district court. I actually recently filed it in state court in New Jersey. It was removed under capital jurisdiction at the request of Uber. I'm going to save you and go right. Oh, but you know what? Let's just stop the clock for a second. We have visitors here. And, you know, when you have visitors in your home, you've got to say hi to them before anything goes on. Sure. So I see that we have folks from the Roosevelt Elementary School. Is that right? Yes. Yes. Well, first of all, welcome to all of you. We're very happy to have you here. We have a case that's of great interest today. We hope you'll be interested. And myself and my colleagues will be happy to chat with you after the argument. But you'll understand our formality now. So welcome. Please have a seat. Is this what I needed? Yeah. All right. Now, so let's start the whole thing again. I won't do the whole schmaltz, but whatever. Thank you. Your honor, the district courts made an error in compelling arbitration of Mr. Singh and error in dismissing the case. The district court relied on the Federal Arbitration Act in so doing. OK, great. Look, now we'll start. Now we're starting. So here's the question. Yes. You're familiar with Gwadadi, right? Sure. OK. So given Gwadadi and given the fact that we're supposed to focus on the fact that it's a motion to compel arbitration and that Judge Jordan in that case said, well, look, when you have a motion to compel arbitration, it is a case that's of great interest. It's akin to summary judgment. It seems that we have a key question of fact on the interstate commerce issue. Your adversary says, oh, no, only involved locally engaging in interstate commerce, not here. So you paragraph twenty nine of your declaration obviously contests that we have a question of fact. Isn't that? Well, if there's a question of fact that goes to the FAA exemption, then it would have to be remanded to the district court to handle that prior to compelling arbitration under new prime. OK, now we'll get to the first part of the sort of two parts of the FAA exclusion conversation. But I just want to take the point one step further. I presume that with the question of fact that we've just discussed, that that would have to be the end of the of the of the inquiry as far as assuming that you got past the first part of the of the two prong exemption issue. Assume that for a moment. If there was a question of fact, it would have to go back. And this court at this juncture really couldn't deal with any of the other issues. Delegation clause, state law, California, New Jersey waiver, Seventh Amendment. Those would all have to take a back seat. Is that right? Absolutely. I would agree if there remains a question of fact that has that discoveries needed to develop, then yes. But I'm not sure there is based on what is before the court in the undisputed record. And so it will it becomes. And this is where it turns on a legal issue, which is, I suppose, why we're here. And it turns on what what we mean when we say someone's engaged in interstate commerce. What is undisputed based on the rights or services agreement, which is fully in the appendix on this Uber runs a nationwide service that provides transportation to its customers and contemplates the drivers will be engaged in interstate travel. Where does it contemplate that it discusses? And I will tell you what it says and I will find the appendix and give it to you on the rebuttal. But it discusses drivers being in the territory. Are we talking about the riser agreement? There's specific language in the riser agreement that you're relying on in response to that. What you're saying there is. But I do want to. I think it's implicit. It's not explicit. But yes, there is specific language we are relying on. And specifically, it discusses how drivers would be in a territory. They get to where the passenger is without even knowing where the passenger is going. They're not told that at the time they get there and the and the application then or the customer tells them where they're going. Here's what I don't understand. Right. If you are suggesting that that cuts in your favor, that doesn't change the fact that a question of fact arises based on what your adversary has said. Right. I mean, their position's not changing your local. You don't engage in interstate commerce. So there's almost nothing you can say to convince us. Right. Because a question of fact has arisen and has to be resolved in the first instance by the district court. If the court's view is that because the court didn't address it, even if it could have, it should go back to the district court. Then I can't disagree with that because what I am proposing is I think it's in the record, but there is no question at all. The district court didn't get the district court focused on the passenger versus goods distinction and ended its analysis at that point. And so there is no factual analysis on the interstate character of my clients job duties at Uber. And so if what the court is saying is, regardless of whether it's in the record, we want the district court in the first instance to make the factual finding. The district court did not do so. Yeah. And I think I'm interested in knowing where in the record there's factual material from which a court, the district or this court could conclude that they were involved in travel interstate. Sure. Because your adversary is saying it best incidental. You know, I think what my adversary is just saying is not primarily. I mean, I think incidental, you know, that is a little bit different and they may use that term, but what is the evidence that says that if they have a declaration from the name, Mr. Cole, is that correct? They have no evidence actually on the interstate. They do say in their briefs continually that it's rare or okay. So I'm really focused on the evidentiary. The evidence is we have a declaration from Mr. Singh saying he frequently went from Newark Airport into New York City. And there's also in the riser services agreement, something I believe allows the implication, but it is only an implication. And I don't. And let me ask you this. This is not about it's a class of workers. It's not Mr. Singh's practices. From what can we glean from the evidentiary record that a class of workers travels in interstate commerce? And that's why you have to get the implication of the riser services agreement. Certainly if the court is looking for more macro level data, we don't have it. It's not in this case. But do you need it? I mean, if you look at what the cases say about semen and railway workers, you have a class of railway railroad workers. Each railroad worker doesn't have to engage in. That's exactly right. So we think the fairest way to interpret it, and this would be a legal interpretation that ultimately maybe is the rule of the court, whether the facts have been resolved, is if the contract of employment, as is now defined a new prime, so not necessarily meaning IC or employee, but if the contract of employment fairly contemplates interstate travel for money, of course, where the travel is the commerce. And so and based on. When you come back on rebuttal, you're going to tell us where in the the riser agreement we could imply that. Yeah. If I understand you correctly, you're saying that inference could be drawn, whether it's between a service provider in Pennsylvania on the eastern part of Pennsylvania or Texas in the middle of Texas. You're saying that those class of workers would reasonably contemplate each of them. They'd move the interstate commerce. Even in one instance, it might be 10 miles in another. It might be fifteen hundred miles, even if as a factual matter, there is no interstate commerce. If the contract contemplates it, I think. Yeah, I think that's correct. Now, I would say that I think there's two ways that the court should consider and how to handle this class of drivers. And it won't surprise me if when Uber gets up here, they want to talk about local taxi companies. And I think that as we all know, and as Uber makes very clear, they are a disruptor to that industry. This San Francisco based technology company, a transportation company, has radically changed it. We are no longer dealing with a thousand or ten thousand local businesses that primarily serve local areas. Uber is very different. They are an international transportation company providing travel throughout the 48 contingent United States. They have their IPO documents. Admittedly, the court has to take notice. It is not in the factual record. So maybe it has to go to the district court. But the court could take notice because the IPO documents are now publicly filed and we could certainly point the court to them. Well, let me ask you this question. They, throughout their papers, assert that the drive your client and Uber drivers in particular only drive locally. Right. So am I correct that the only the only factual record that derives from Uber is the Coleman declaration? Yes. Right. Yes. That's correct. That is correct. OK. So the Coleman declaration, I as you were talking, I kind of went through it again and. We don't need to go through it, but let me ask you this proposition. If it's not in the Coleman declaration, then it's not in the record before us. So is your position that if it's not in the Coleman declaration, then a question of fact hasn't been joined essentially? Yeah. I mean, I think that, by the way, I'm not looking at the Coleman declaration might use the word local. It does not use the word interstate. And they may not even use the word local. But it certainly does not claim the drivers are only involved in interstate or even primarily involved in interstate transit. And I may not even use the word local, but I just want to make sure that I'm being clear. I can't remember right now, but I know it does not explain. It does not make a distinction between interstate and interstate. And yes, the only facts in the record that deal with interstate travel other than potentially documents the corporate have to take notice on is the riser agreement, which we believe implies a non local travel and non interstate travel and implies the recognition that they may be doing interstate travel and my client's declaration, which clearly states this is what I'm doing. What is your best authority to say that the exemption applies to the transportation of both individuals, human beings and property? So the you know, we now know from new prime and I mean, I know the court had to submit letter briefs and we did it and we did the best we could. But we've had even more time to contemplate such a major U.S. Supreme Court decision in the months that have passed. And one thing that we noticed about new prime is it cites, it says the way to determine this exemption and they're dealing, of course, with the contracts of employment, but it is the same clause in the same statute passed at the same time. It says we have to figure out what it meant in 1925. That's the best way to figure this thing out. And they cite to a number of dictionaries at that time. We looked at all of them. They're actually all available in archive and we're happy to give the courts copies. The two that define interstate commerce, because some are like Webster's, they're not going to define interstate commerce. Two of them do define interstate commerce. One is the Black's Law Dictionary, second edition from 1910. And it defines interstate commerce as traffic, intercourse, commercial trading or the transportation of persons or property between or among the several states of the union or from or between points in one state to another state. So the very source that the Supreme Court thought important to interpret the law explains and includes passengers. Similarly, the Century Dictionary Encyclopedia of 1906 defined interstate commerce as including commercial transactions between persons carried on by lines of transport extending into more than one state. So the Supreme Court's sources support the idea that it's passengers. We also pointed the court in our briefs to a number of statutes passed at the time, the Railway Labor Act, the Railway Act, the Interstate Commerce Act, all suggesting that interstate commerce includes more than passengers. There's the goods. Yes, it includes more than goods. Thank you, Your Honor. The only, you know, I'm not sure if the defendant's position is interstate commerce in 1925 didn't include passengers, which the sources say they'd be incorrect. Or if they're saying that somehow the court. Why aren't you talking about our cases? The Third Circuit cases? Well, of course. Thank you. Thank you, Your Honor. Yeah. The other thing is that they basically informed the court that somehow the two Greyhound bus cases have been overruled, which they have not been. And of course, this court has found the bus line employees are clearly in the class of workers covered by the FAA exemption. That was true in 1953. There's nothing in the statutory text to suggest this court got it wrong. They were probably more in line with what we thought 25 years before than now we have to look almost 100 years before. But there's nothing in the cases at all to suggest that was wrong. Interestingly, the Supreme Court itself, when it uses the for instance language, which is now being dogmatically repeated by Uber as if the for instance is a conclusive list, cited to I think it was a Fifth Circuit case. And if you actually look at Fifth Circuit case sites to this court's decision in Tanay, which just reaffirmed, that was I think a 1953 case from this circuit, that in fact it includes bus line employees, people who do passengers. And so this whole line of cases that virtually every circuit has said it only includes goods, one is incorrect. And if you actually look at the cases, the courts didn't deal with this distinction and it wasn't material to what the court was doing. There are a few district court decisions, immediately seeing as one of them, where the distinction was important. But they just claimed the circuit courts and Circuit City did something that they never did. So let's talk about Circuit City for a second. Sure. So in Circuit City, the Supreme Court stated that most court appeals conclude that the section one of the FAA is limited to transportation workers, defined for instance as those workers actually engaged in the movement of goods in interstate commerce.  I wonder what your view is and whether you can take us through the problem with the premise to that statement. You know, I think first the Supreme Court, I'm not, said for instance. And, you know, and yet of course you're on a red, for instance, in Uber's briefs, they don't use those two terms. And that's really important because as this court knows, when it writes opinions, it might, to explain what it's saying, use an example. But if it was meant to be a conclusive list, then for instance should not be an opinion at all. So the Supreme Court was careful to use the word for instance. And in fact the very next year when, and it wasn't, admittedly it was an EOC case, it dealt with whether you have to arbitrate with the EOC. But in Waffle House v. EOC, when they repeat what Circuit City means, they don't talk, they just say transportation workers are exempt. And they don't say moving goods. And New Prime, admittedly the distinction wasn't important there, but again we see the transportation workers language. We don't see this goods language. Ultimately the only way this, based on New Prime, this court could interpret Circuit City. Oh, so I don't want to get away from your question. I'm sorry. So your question was how do we deal with how the court has dealt with the Circuit Court of Appeals opinions. And I want to say I don't think the Supreme Court got it wrong because it said, for instance, what the Supreme Court was saying, and respectfully this court got it right in the 1950s, was interstate commerce is not going to be read broadly. We are going to look at it in a reasonable way, but we're going to look at it more narrowly than the constitutional limits of that phrase. And so when this court decided bus line employees were covered but engineers weren't, which is what those three decisions held, it got it right. Because of course under, ultimately it was overturned in Circuit City and became the law of the land. The Ninth Circuit would have ruled presumably for the engineer saying he was exempt because he's affecting interstate commerce. This court didn't buy that argument. It narrowly construed the exemption just as the Supreme Court later determined was the correct way to do it, admittedly almost 60 years after that fact, but nevertheless got it right. And what this court held is it applies to transportation workers. So it is correct to say that nearly every Circuit Court of Appeals did interpret it that way. It's wrong to say that the goods distinction was part of that analysis. And if you look at the Circuit Court decisions which predate Circuit City and the ones that are always pointed to, so Palo Vino, the Avnet computer techs dealt with technical support employees. And again, you had this affecting interstate commerce but not being engaged in the transportation. In that case, they weren't exempt, the same reason this court found. Colby Burns International, which was the D.C. Circuit Court of Appeals, we were dealing with a security guard. And again, it was this affecting versus being engaged. And we list them all in our brief, but it, you know, O'Neill v. Hilton, which was Fourth Circuit, it was a respiratory therapist. In Rojas v. T.K., I think it was Cummins, Fifth Circuit, we were dealing with a disc jockey. We were dealing with a consultant in Matthews v. Rawlins, a Hudwig Hall company. We can get to the one with Dr. J. I mean, I guess the short of it is, especially since I know that you guys are, I have more, I've been beyond my 12 minutes, none of the cases from the Circuit Court of Appeals except for the one in this circuit actually had to deal with this distinction. And this court, in 1952 and 53, interpreted it very consistently with how the U.S. Supreme Court would in 2001. It refused to hold the exemption applied to engineers and people who broadly affect interstate commerce, but are not involved in the transportation industry and are not involved in transportation, and held it to apply for individuals who primarily move passengers, but are in a commercial transaction in the transportation industry. And Circuit City was, the decision really was textual. But after the textual analysis, the court said, and one reason why Congress might have written it this way, is because seaman and railroad employees had separate statutory schemes that put them into arbitration. If you consider that as sort of part of this analysis, and I'm not sure we should, as opposed to merely looking at the text, are there pending statutory schemes that would cover Uber drivers, for example, the way there were in the 1920s? Sure. No, I think that's correct. I mean, that is correct, although it's also true that there are regulations for people engaged in interstate commerce who primarily move passengers. I mean, bus drivers are regulated by DOT. We don't know where the regulation will ultimately go because we are now in a new point in our nation's history where we are seeing a new type of private transportation industry. And where Uber fits on the taxi or more like a railroad distinction, I don't think is quite as clear as Uber wants to say. I mean, Uber just wants to say they're a technology company, but then they want to be compared to the local cab company working out of Jackson, New Jersey. And that's just not Uber. So they are now in a new space, and we've heard Congress talking about potentially regulating. But I think to directly answer your point, Judge Porter, I think you've got to look at the statutory text and what the legislatures meant when they wrote the text. And we can look at what the dictionary said back then. We can look at what the case law was coming out in the 1920s and 1930s, and it clearly speaks to the idea that passenger travel is included and that it's about transporting. So it's not the account manager who has accounts in multiple states and drives across the states. He's not included. But when you are getting paid to do the transportation and that is the commercial transaction, that constitutes interstate commerce. Thank you. Thank you, Your Honor. Thank you. Just give me one second. I'm so sorry. Thank you. So help us with that. So I hope I quoted either the Coleman Declaration or whatever other factual evidence there is on the record from Uber when it said that the Uber driver particularly here only acted locally. It seems fairly clear that if that's on the one side and you have the same declaration on the other side saying that it's not so, that that's creating an issue of fact. Thank you, Your Honor. That's a great point, and I'll start with whose burden it is at this stage. I think we have to start by framing this. It is plaintiff's burden to demonstrate that the exception applies to him. First, the FAA would apply because this involves commerce very broadly. But then if plaintiff wants to fall within Section 1, he has to demonstrate that he's within the class of workers who's covered. And here, all he submitted was one declaration about him personally. And the fact that he never said he travels across country. He just said that he goes over state lines into Manhattan from Newark Airport, which is still local in nature inherently. He's talking only about himself. He put in no evidence. He came to the court as a motion to dismiss before there was a discovery schedule set. And in his opposition brief, I believe there was some mention of, if we think we need to develop a factual record, then we should do some discovery. Your Honor, I think it was his burden at that stage in opposing the motion to compel arbitration and to dismiss on those grounds. The court was permitted to look beyond the pleadings. It did look beyond the pleadings. There was evidence put in. It actually does not conflict. Your Honor, I'd like to point to the Raise Zero Agreement, which plaintiff's counsel cited. I think it proves our point. If you look at Appendix Page 43, Section 1.1, it says territory. It talks about the territory of a driver using the Uber app. It means the city or metro area. Could you stop for a moment? I beg your pardon. 1.1 doesn't say territory. So where do you want to point us to? 1.10. It says territory. It means city or metro areas in the United States in which you are enabled by the driver app to provide transportation services. So I think, again, as we all know it, the Uber app and drivers who provide local black car service like taxi cabs, like limos or, again, sedans. I send my mother-in-law in an Uber from New Jersey to New York all the time. So did you want it to put in an affidavit from my mother-in-law saying that she uses Uber in that way? The real question is, in this context, although we're treating it as summary judgment, it's a motion to compel arbitration, which began as a motion to dismiss. What quantum of proof are we to require merely to create a genuine dispute as to a material fact? Well, I think there's a great decision from the Northern District of California in the Villas v. Sintas case, and that case really goes through in detail. Judge Armstrong goes through in detail whether the party there who worked for Sintas falls within the Section 1 exemption and goes through all of the evidence in the record and says it was plaintiff's burden to put in declarations to put in evidence about the class of workers. How would you have responded if his response to your motion to dismiss was serving a document demand and a deposition notice? Wouldn't your response have been, whoa, wait a minute, we're at motion to dismiss. We shouldn't be doing any discovery. I mean, do you think that would have really occurred? Well, Your Honor, plaintiff didn't. And that's the interesting thing here. I'd like to take another step back because to Judge Greenaway's question about your mom going into Manhattan from New Jersey, I'm sure it's the case that there are dominoes delivery drivers who go from Kansas City, Missouri to Kansas City, Kansas. I'm going to talk to you about Grubhub in just a moment, but let's stick with Judge Schwartz's question. Yes. I think here plaintiff didn't. So plaintiff had an opportunity. So this is a failure of proof case. From your point of view, if they can win on every legal ground, but it's a failure of proof on their ground that they didn't demonstrate that they're in the class of workers engaged in nursing homes. I think it is both a failure of proof and we can tell by looking at the statute and Circuit City. And I'd like to go to Circuit City. We can look at this class of workers. I think it is undisputed what sort of category of class of workers we're talking about. But we have to be careful about what we're talking about. And I think the court defined it is providers of local passenger car service size local. Yes. And it is local because even if you're in a metro area that just incidentally happens to be an area that's interstate but it's a metro area. It's still inherently local. It's not like railroad employees. It's not like shipping. And I'd like to deal with our how do you deal with our case law. Your Honor. I think that first of all let's let's start with this principle. You would agree that our case law has not been overturned or disturbed by either Circuit City new prime or any other law of the Supreme Court. Would you agree with that proposition. Well Your Honor I think if you're referring to the Greyhound cases I'm referring to both Greyhound and Tenney because I think that Tenney brings some some clarity to Greyhound because of I'll read I'll read it so that we're not we're not referring to something in Tenney. We said Now what I'm about to read is saying why the actual facts in Tenney were not within the exemption. But then it goes on to what I'd like to discuss with you. In this respect the present case is distinguishable from the two Pennsylvania Greyhound lines cases decided by this court. The bus line employees in those cases being directly engaged in the channels of interstate transportation just as our railroad workers. So directly engaged in the channels of interstate transport. So bus drivers railway workers engaged in that case does speak to the fact that it was a concurrence by Judge Biggs. Yes. So in Tenney it was the concurrence. Excuse me. It says that the majority view is limiting Section 1 to contracts of employment of workers engaged in transporting goods in interstate commerce. So the concurrence is thinks that the opinion is limited to transportation of goods. There was the line in the in the first Greyhound case that without any discussion about why bus drivers are like railroad employees or seamen or are in any way necessary for the free flow of goods. So I do think Circuit City cast doubt on that. Well what about what about you. It's us when you know to someone too long. So so what about New Prime right where Justice Gorsuch is referring to the I was going to say team doctor. I didn't mean team doctor the doctor in that context as falling within the ambit of semen. I mean you know to the extent that we're talking about exactitude there clearly that was beyond you know the exactitude that I think you would say we need to fall within transportation workers. Well I think that New Prime again goes back to 1925 and it looks to 1925 and what Congress was regulating what Congress believed it could regulate. And then the key decision here is really Circuit City because it goes on at length about what the Section 1 exemption was supposed to cover. And it was about areas where Congress had enacted comprehensive legislation about railroad workers in Phila or shipping in the Jones Act. There was nothing like that here. This is not a an industry that is regulated comprehensively on the national scale. There are local regulations of taxi cabs and of other local transportation. And I'd like to go back to why the plaintiff's declaration isn't enough here because I want to follow up. You mentioned that you know that the court looked at the statutes in effect in the 1920s. Those statutes included the Railway Act the Interstate Commerce Act by reference. They all talked about the transportation of goods and passengers. So are you saying that you're not. Let me rephrase this. Is it your position that even if the exemption applies to the transportation of both goods and passengers the reason why Uber drivers aren't covered is that there is no national regulatory scheme that governs their behavior. That is one reason Your Honor. Yes. And because it is different in character. You can have a rickshaw in New York. I see them in San Francisco taking people throughout different parts of the neighborhood. That's not interstate commerce and interstate transportation in the same sense as railroad employees and seamen. I think just as looking at the statute and then I'd like to go back to why the plaintiff's declaration isn't enough here before you go to bed. Are you abandoning the view that there's some difference between transportation goods and persons. I wouldn't abandon it Your Honor but I don't think the court needs to there's something inherently different between a Greyhound bus line which takes people from Philadelphia to Seattle versus a local car service and what you keep. Well what are the characteristics. So if you assume for the purposes of this question that we don't buy the goods passengers distinction and New Prime has taken independent contracting off the table. What are the characteristics that separate railroad employees and other classes of workers engaged in interstate commerce. Again I think it is the inherently local character of the work and I will explain for a minute if plain plaintiff the statute talks about classes of workers. So not the not one worker alone. It also speaks to contracts of employment of that class of workers. So here plaintiff's contract is either covered by the FAA or not and it shouldn't depend if he's in Miami or Newark or Honolulu. He's not going to cross state lines in Honolulu. But here's what I don't understand. Uber is everywhere right. We can the 48th figure of states. Let's just keep it at that for a moment. I know you're in Europe but just for the purposes of this discussion for the moment. So Uber is everywhere. You know Uber is cross state lines all the time. I mean you're in Philadelphia. You want to go to Cherry Hill. You're in Pittsburgh. You want to go to Ohio. I know there's some close town. That's close enough. Right. You know you're in New Jersey. You want to go to New York. So is is would you have the same argument if Mr. Singh said here's the declaration of 10 Uber drivers who frequent Newark Airport as I do and they all go to New York. I don't think that that changes the equation. We have to start again with Section 1 under Circuit City. It has to be given a narrow construction. So if we start saying anyone who crosses state lines or is in a class of workers who crosses state lines we're getting dominoes is in 50 states. We're getting you know Circuit City was in 50 states. There are lots of different questions. Yes you are. And the city's really not dealing with what's certainly not dealing with the question that we're dealing with here. I mean there it's it's much more about the ambit of the workers who are involved and not exactly the question. I think it's the factual issue maybe still has to be ironed out. But as a legal proposition what would be the test for what what what amount of frequency would you be looking for for a transportation worker to be going interstate with passengers or goods in order to qualify. Is it incidental. Is it occasional. Is it daily. I mean how would how would we know. I think we have to look at the class of workers as a whole and whether the character is inherently local or interstate. But Your Honor I'd like to just for a moment say here that plaintiff I don't think carried his burden to show that the FAA doesn't apply. But even if the FAA doesn't apply this court really doesn't need to reach that issue here because the result would be the same under the New Jersey Arbitration Act. But wait a minute. You didn't raise that in your briefing in front of us. We were the only place I remember seeing it. I'm happy to be correct. It is in your reply brief in the district court. Your Honor that issue it was raised in the district court but it has been briefed now by both parties I've heard you. It's a supplemental supplementary thing. And and you're saying that that the court asked for it absolves everybody of waiver. No Your Honor we did raise it in the district court but it applied your reply brief right. Yes we did. And because again it wasn't our burden to show that Section 1 doesn't apply. But you made a motion to compel arbitration. That's what you were looking for. So I think but it's a legal issue and all all sides agree that New Jersey law applies here and the New Jersey Arbitration Act applies to all arbitration contracts in New Jersey. And you're asking us in the first instance that we should we should take a look at that. Your Honor I just think that the result would would be the same under both statutes. But but again you're not suggesting that I want to follow up on this. You're not suggesting that we say FAA we don't really want to deal with you. Just New Jersey A that applies and that's good enough. You're not suggesting that. No Your Honor I'm saying that the result would be the same whichever one applies. The court asked in in the second question for supplemental briefing. So I wanted to be sure to address the court's question. But again if we look at Circuit City we have to be cognizant of the fact that this is a narrow construction narrow exception that was enacted as part of a statute that sought to overcome judicial hostility to arbitration. And so we have to be informed by that. The fact that there were comprehensive statutes and regulatory regimes that governed railroad workers and seamen. We have to interpret the residual clause in light of those categories of workers. It's a narrow case law that you have this this mighty panel overturn an en banc decision. No Your Honor. You wouldn't have to overturn it because I think this is distinguishable. I think an interstate bus line if Your Honor is referring to the Graham cases is distinguishable from a taxi passenger car rickshaw ambulance. Any one of that has to overturn our prior rulings that say transportation of people fall within. I don't think the court has to Your Honor. But I do think that Circuit City teaches that it is about your position but you're but you're not asking us to do that. No. But what you're saying is though because there's this larger regulatory scheme by Congress for railway workers airline workers we know through the ICA. Right. That's what you want us to and the 11th Circuit's decision in Hill versus Rent-A-Center and the 8th Circuit's decision in Lenz also talks about those regulatory regimes. And in those cases the this court would be creating a split if it you know can harmonize the 3rd Circuit decisions in Graham this court's decisions in those cases and the decisions of other circuits since Circuit City by holding that this class of workers plaintiff has failed to demonstrate that this class of workers is like railroad employees seamen shipping or interstate busing. But again I think if you go back and answer Judge Porter's question what are the that are inherently local or interstate. Yes. And subject to a comprehensive federal regulatory regime and the cases that again the 8th Circuit's decision I think is very helpful. And also I cited the Villas versus Cintas case. Please. I'm happy you went back to that. Yes. Could you tell me whether the procedural posture in that decision your honor. Pardon me. It was a motion to compel arbitration. What was the record. Was it being viewed as a rule 56 or rule 12B6 if you can tell. And was there discovery. Yeah. Your honor I can I can look into this I apologize I don't have it but you have it open. Can you give us a site for the record please. Yes. The citation is Westlaw 2014 Westlaw 224 52 8 5 1. One more time with the number if you could 2 4 5 2 8 5 1. Thanks. So thank you your honor I I appreciate the court's attention to this and the questions today. Thank you. How do you respond to your adversaries contention that plaintiff had the burden of proof to produce an evidentiary record to show that he's within a class of workers that engaged in interstate commerce. Well I think first of all I did want to note to the court's attention the reply brief filed by the defense and the district court at footnote 9 and I did not write the page numbers footnote 9 specifically disavowed our request for discovery and explained that would put that would totally defeat the purposes of arbitration to allow us to have discovery in federal court. And we never had a rule 26 conference because they filed their motion and of course at all times so there was no jurisdiction. So we weren't authorized by the federal rules to take any discovery and true we didn't serve a deposition notice and true if we had despite authorization from the federal no authorization under rule 26 I suppose they might have conceded it but I don't think we have an obligation to violate the federal civil procedure. We asked the court to allow us to take that discovery and were denied and Uber in footnote 9 specifically said you should not allow discovery that would totally defeat the purposes and benefits of arbitration. I did want to respond to just a few your your honor had a question about where in the appendix would we find the and that was a it's section 2.2 of the riser agreement and I'm excuse me it's section 2.2 of the riser agreement and I put a four but I know the four has a number at the end of it I'm so sorry that I put it in section 2.2 and it talks about how you pick up individuals in the territories but that you don't know where they're going to go until you get there and so when you consider I think the scope of Uber it sort of answers the point. But what you want to take a see everybody talks about we should consider the scope of Uber and I know there have been anecdotal comments made but we don't we don't get to rule on anecdotes so that's true I suppose you have to be remanded I mean unless the court would indulge a motion to take additional notice of their IPO documents which are now publicly filed with the SEC which I think do establish this point they were not available at the time we were in court they established the interstate commerce point they established I think and I'm doing this from memory but something in the line of 15 point some odd billion miles that they've operated in the United States and they yes. But just because Uber operates all over the place and does a lot of miles doesn't mean it's class of that these class of drivers do correct? That's true but so for example and I know obviously Circuit City wasn't the only transportation workers but Circuit City clearly you know is in every state but the workers are all in their specific store. You know Uber has a nationwide transportation center which drivers like Jasper or Phil they don't have 48 segregated markets it's very you know it's not that New Jersey drivers in Jersey and we also operate in Pennsylvania separately absolutely not they are constantly crossing and mainly my assumption we can get discovery on it but you know I think the answer actually from Uber's attorney was when you look at the class of workers you have to look at whether as a class they're crossing state lines. So let's look at all Uber drivers I think that's that would be a terrific test we don't have discovery on it. I'm excited to get it. How would you define the class? Oh I think that would be well I think again it's workers who contracts and employment contemplate interstate travel for money and that the transportation itself is the commerce not just incidental to some other work they're doing. So not I mean my office is in New Jersey my lawyers come to this court sometimes but that is not what the court means when they say interstate commerce. How do you respond though to your officer's additional component for Judge Porter's question about a test where the additional point was in that they are subject to a federal regulatory scheme. What do we do with that? One in Circuit City in explaining its decision they said I think they were addressing what they what the an amicus or the or the respondent who ultimately lost was paradoxical because it's actually that Congress was concerned about the constitutional limits listed the two types of employees they knew and now the people who are further from perhaps the Constitutional Commerce Clause are the very people who are who are not covered by the exemption and the court said hey there's not much legislative history. So interesting point but we have a counterpoint that is equally and they don't say it's that one's wrong there. They ultimately go to textualism of the text. They interpret the text. They say what does this mean when it was written and it's exactly we're asking the court to do that. They offer a possibility of an explanation which is the regulation. They don't say that's the issue and of course the statute in no way says workers engaged in regulated interstate commerce. It could if that's what Congress meant clearly that work would be there. It does not say that. It says nothing about regulation. That was a proposal explained in Circuit City to explain why they did not believe what they were doing was a paradox basically. And it makes sense but they in no way claim this is the test. The test was transportation workers. And I gather I think the reference you're the section you're talking about is where the court made an observation. There wasn't a lot of legislative history and so they were trying to surmise what would have motivated this sort of identification of railroad workers and seamen. That's right. And they don't in any way say they are certain or this is what happened. They just said this is one explanation. But at the end of the day I don't think the court was worried about that. They were worried about what did this text mean when it was written. And we see that again in New Prime which of course in no way changes that test. I think the other point that I oh and I maybe it almost sounded like it was so shot out that maybe it's not worth fully I think we can all agree New Jersey state statute is not going to rob a federal court of federal subject matter jurisdiction. So whether there's some other avenue they can make in the district court the motion we are on appeal on is under strictly the FAA in 12 B1. I don't believe a New Jersey state statute has any ability to change this court. They didn't raise it at the New Jersey State Arbitration Act. Well that's what I'm saying. It can't rob this court of subject matter jurisdiction. Well your jurisdictional argument well their jurisdictional argument to get this into federal court is CAFA. Right. That's exactly right. And I think that although because it wasn't raised on this court has to deal with it to the there's a you know this court did hold in Palco that a state arb law is not going to conflict with the FAA simply because simply because there's not an exemption. But it would interfere with the subject matter jurisdictions diversity in CAFA. How would it interfere with subject matter jurisdiction. You either have it or you don't. Well again right. Right. It either exists or it doesn't. State can't tell this court it doesn't have jurisdiction. I don't think that they're my understanding of your officer's argument is not that a lack of jurisdiction. We have jurisdiction power over the parties by virtue of the representations of CAFA. They're suggesting I think that the basis for relief another ground to dismiss not for lack of subject matter jurisdiction but because of an arbitration agreement the parties have concurred that from their point of view that resolution of any dispute should not be happening in a tribunal should be happening before an arbitrator. It might. Does that make sense to you. The motion was following 12B1. So I don't mean to be you know ultimately I understand they may make that the argument your because they relied on 12B1. Right. And I do just need to add maybe two more points if I can. One is that we've not conceded what we said is we get an appeal the court's determination that New Jersey law applies to the agreement. It does not to say because it wasn't material to the FAA. It's not to say that we've accepted that. And I think importantly and there's a new case to Washington that just did this with Amazon where Amazon said you know the arbitration is pursuant to the FAA. So the choice of law for that provision was the Federal Arbitration Act. This agreement has the exact same language. And so the agreement is subject to the FAA. They have that is separate apparently than the general California law interpretation of the court relied on Jersey which we do not believe is material for any part of what we're doing here today. But they have they chose and if we buy this argument that this was a conscious decision of two consenting parties and they knowledge then they both agreed my client and Uber they were going to have this live or die under the Federal Arbitration Act. Ultimately I don't think any of that's before the court but this idea that it's completely irrelevant and we're just I hear that's just not the case. And I just want to make that clear. Excuse me. Let me ask you the same question I asked Ms. Evangelist which is to describe the frequency of interstate commerce that's necessary. And I think what I hear you saying is it doesn't matter if it's if the if the agreement contemplates interstate travel that's sufficient even if it's counterfactual. Well I think that it I mean if it's if it's I think our position is that if the agreement fairly contemplates interstate travel and I would say that you know if it's a one off because it's a very small company then you know that might be harder. But in a company like Uber no you would not be able to say this fairly contemplates interstate travel if the record shows that there's two million Uber drivers and three of them cross state lines. No I mean we would recognize that that despite what the contract says we actually have enough data now to see there was no fair contemplation of that. So but yeah I think that we'd have to fairly contemplate it. There's nothing in the statute that says primarily engaged in interstate commerce or or more than half the time. And you know we do see that in some statutes. Of course the FLSA is one of them where we start talking about primary duties and things like that. That language is not in the FAA. But because we're not dealing with the constitutional limits of interstate commerce there's some less there's some less amount right. Or I guess greater amount because a little bit isn't enough in this situation. Well I do want to get back in this is the narrow construction which is we're not doing the constitutional limits. If we were circuit city employees would have been covered. And so and so would it be quite frank everyone over the FLSA which is a federal law clearly then be covered. And so we're not dealing with the constitutional limits. But that doesn't I think mean that for transportation workers and interstate travel suddenly it has to be primarily or a large amount or even more than half because the law doesn't say that. And so no party is arguing go to the constitutional limits. That has been quite frankly this court got it right in the 1950s but the Supreme Court resolved it forever. So where is the where's the magic line. Well you're asking for frequency and I guess I'm answering that I don't think frequency is the test. It's fair contemplation. And I think that you'd have to balance the facts. And if you had a situation where you have two million Uber drivers and very few of them are crossing then that fact would certainly go against what I think the real test is which is is there a fair contemplation of interstate travel. So it's not an irrelevant fact but I don't think it's like to me it's a factor of the test. But but but but for our purposes at this point yes you you you pose a sufficient amount of evidence to create the genuine dispute is to material fact that that's your overriding point. I mean I don't. I actually think that it's you know I mean the problem is there are certain realities because we're dealing with Uber and it's IPO and everything that we know. I suppose the factual record there's. I'm thinking because all we have is my client's declaration quite frankly and potentially public documents the court could take and I don't believe there's a dispute there. But if the question is we don't know what happens to you know two million other Uber drivers. True. So there's a dispute. I mean it's unknown. We didn't get discovered. Well yeah I mean we we can't take judicial notice of what's going on. That's right. A million Uber drivers. That's a good point Your Honor. And so yes. And I suppose I mean I I did want to say one last point but I'm going to hold you to it. This is it. Well you're one last point. That was two points ago. That's true. This is good. Be nice to litigants today. I mean you know in the event the court does think my client is covered by the FAA is not covered then we do have to get to the constitutional issue. And since it is an extremely important issue the Seventh Amendment the United States Constitution I don't want to leave here without saying one thing about it. And I'm going to I just want to add that it was waived in the agreement and you had a chance to opt out of it. Well it still has to be knowing and intentional. I mean clearly if he read it and the court buys that constructive notice of this type in a EULA which is I mean I know that you know the facts are it's called the riser services agreement. The title of the document does not give away that as a jury waiver. It is a I think 19 or 20 page document when it's on eight and a half by 11 on a small phone you would imagine it's much smaller. But the document is much smaller which we do cite to Third Circuit 2007 502 F3 3rd 212 acknowledges that there is currently tension between the Seventh Amendment and the jury waiver and the Federal Arbitration Act and actually cites to a law review article which really hits it on the head which is it's called Mandatory Binding Arbitrations and the Demise of the Seventh Amendment 16 Ohio State J Dispute Resolution 2001 669 2001. What was this cite to our case? Oh sure it's Tracinda Court v. Daniel Chrysler AG 502 F3 212 Third Circuit 07. Now that case the court didn't have to deal with it because of course we're going to avoid the constitutional issue when we can and that case dealt with a knowing waiver from an agent and the question was are you bound to what your agent says and sure I could waive my client's jury waiver jury rights the same way so the court had no problem distinguishing it. But you know noticed and specifically and this is what the court actually said it said considering the third circuit now considering the loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate that the submission of a case to arbitration involves a greater compromise procedural protections than does the waiver of the right to a trial by jury some commenters consider it curious that courts apply a presumption in favor of an ARB but against a mere jury waiver provision. Nevertheless the tension between the cases favoring arbitration and those disfavoring jury waivers does not affect the proprietary of the district court's reliance here. Do you agree that in this case which might make it different than Daniel Chrysler is that your client could opt out of those waivers? I don't believe it does because the issue of opting out or not is not the test it's whether it was an intentional relinquishment and my client the undisputed not to relinquish anything I'm sorry my point he had an opportunity to relinquish nothing as my point but he didn't know that because I understand your position their points instructive notice and as we point out Judge Scalia said that has no place that has absolutely no place in constitutional fundamental rights it's not it would not be a bad interpretation of the Constitution coupled with the FAA to say you can absolutely have arbitration agreements we are going to uphold these things oh but you know it needs to actually be presented you need to tell people they're waiving their jury and it needs to be very conspicuous and it can't be hidden in a hyperlink in a document that sounds like any other type of software agreement you have to be very clear what you're doing that's all we're saying Hoover didn't do that. Thank you counsel we will take the matter under advisement and we are adjourned.